IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EZEKIEL GREGORY ANDREWS | § | |
| a/k/a EZEKIEL ANDREWS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-2160-D |
| VS. | § | |
| | § | |
| SCHNEIDER LOGISTICS, INC., a | § | |
| wholly owned subsidiary of | § | |
| SCHNEIDER NATIONAL, INC., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Ezekiel Gregory Andrews ("Andrews")—an African-American male—sues his former employer, defendant Schneider National Carriers, Inc. ("Schneider"),[1] alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and/or Texas law for race discrimination, sex discrimination, hostile work environment, retaliation, defamation, wrongful termination, and mental abuse in the workplace. Schneider moves for summary judgment. For the reasons that follow, the court grants defendant's motion, raises *sua sponte* that Schneider is entitled to summary judgment on four grounds of Andrews' defamation claim that Schneider did not raise, and grants Andrews leave to respond as to the basis for summary judgment that the court has raised *sua sponte*.

---

[1]Schneider asserts that Andrews' complaint incorrectly identifies it as "Schneider Logistics, Inc., a wholly owned subsidiary of Schneider National, Inc. and Schneider National, Inc."

I

Before Schneider terminated Andrews, it employed him as an Inside Sales Executive.[2] In this position, Andrews was responsible for calling potential clients to sell Schneider's shipping logistics services, calling existing clients to manage relationships, and negotiating by telephone with carriers.  Andrews worked on a team of Sales Executives who reported to Bob Argyle, a Team Lead.  At the time he was hired in April 2012, Andrews acknowledged in writing that he was an at-will employee and that he had no expectation of privacy in any communications made while using Schneider's email system.

Noreen Lodhi ("Lodhi") was already employed at Schneider as an Account Executive when Andrews was hired.  Lodhi reported to Billy Bass ("Bass"), an African-American male. In May 2012 Andrews and Lodhi began exchanging flirtatious emails through Schneider's email system.  In June, Andrews and Lodhi began a sexual relationship.  By July 2012, however, Lodhi was "starting to really get on [Andrews'] nerves," D. App. 19, although he and Lodhi continued to exchange emails through August 2012.

On August 25, 2012, Andrews invited Lodhi to spend the night at his apartment, and they had consensual sexual intercourse.  The following day, Lodhi called the police and reported that Andrews had choked her and punched her in the stomach.  When Lodhi

---

[2]In recounting the factual background, the court summarizes the evidence in the light most favorable to Andrews as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

reported to work the following Monday, she informed Bass that Andrews had tried to kill her. Human Resources Manager Jen Anderson ("Anderson") and Regional Vice President Troy Campbell ("Campbell") then met with Andrews to share what Lodhi had reported. During the meeting, Andrews denied trying to kill Lodhi and complained that she had been harassing him.[3]

After Anderson and Campbell conferred with the Human Resources Business Director regarding Schneider's obligations, Anderson instructed Andrews that he and Lodhi should not have any further contact. Schneider also allowed Lodhi to park in a different area, away from other employee parking and in view of a security camera, and moved Lodhi's desk so that she and Andrews would not be near each other or need to encounter each other in the office.

On September 6, 2012 a Texas state court issued an *ex parte* temporary order ("Order") that prohibited Andrews from communicating with Lodhi or going within 200 yards of her residence. After receiving a copy of the Order, Campbell sent Andrews home for the day while he reviewed the terms of the Order with Human Resources to determine whether Andrews and Lodhi could continue to work in the same office without violating the Order. Campbell determined that they could, and Andrews returned to work the next day.

Later in September, Adrian Barbera ("Barbera"), an African-American male, became

---

[3]Andrews admitted during his deposition that this was the first time he had made any complaint to Anderson or Campbell about Lodhi's harassing him.

Andrews' supervisor.  When Barbera arrived, Andrews was "below RAMP," meaning he was not meeting his expected sales targets.  Andrews was also having difficulty with one of his largest customers, who was refusing to pay Schneider for the services Andrews had sold to it.  Throughout the fall of 2012, Lodhi repeatedly reported to her superiors (including Barbera) that she felt threatened by Andrews, and she demanded that Schneider fire him.  Schneider contends that it refused to terminate Andrews' employment based on allegations of conduct that occurred outside of the workplace, and that it instructed Lodhi that she was expected to conduct herself in a professional manner while at work.

On September 26, 2012 Andrews showed Campbell and Barbera emails from Lodhi that he claimed were harassing, and a telephone bill that he claimed demonstrated Lodhi was harassing him.  Barbera contends that he could not conclude from this documentation that any harassment had taken place or that any additional action on the part of Schneider was warranted.  Barbera also denied Andrews' request that he be permitted to work from home so that he would not have to see Lodhi, reasoning that because Andrews' performance in the office with daily oversight was unsatisfactory, he was unlikely to perform satisfactorily at home.

On October 1, 2012 Lodhi told Barbera, Anderson, and Bass that Andrews had approached her in the parking garage and told her, "I know where you park. . . .  I can make it look like an accident."  D. App. 90.  Barbera informed Lodhi that it was up to her how to handle the situation and that he could not advise her what to do.  Barbera then informed Andrews of Lodhi's accusation and told him that if anything further happened, Barbera

would let him know.  Unbeknownst to Schneider, Lodhi called the police and accused Andrews of violating the Order.  Shortly thereafter, the police arrived, arrested Andrews, and took him to jail.

On October 3, 2012 Andrews participated in a conference call with a number of Schneider supervisors regarding his job performance.  He alleges that, during this call, he complained that he was being treated differently from Lodhi due to his male sex.  On October 11, 2012 Andrews met with Campbell, Anderson, and Barbera to discuss his job performance, which he admits was unsatisfactory.

In early October 2012, allegedly in response to the escalating situation between Andrews and Lodhi and Andrews' complaints about harassing emails, Schneider directed its IT department to monitor Andrews' and Lodhi's email accounts for any evidence of harassing messages or inappropriate use.  On October 11, 2012 Andrews sent an email through Schneider's email system to a third party, inquiring about a potential job opening and asking the recipient to send information to his personal email address because "[a]s of next week this email will be inactivated as I am resigning."  D. App. 161.  In the course of monitoring Andrews' and Lodhi's email accounts for harassing emails, Schneider discovered Andrews' statement of his intent to resign.  Barbera decided to accept Andrews' email as a resignation, and, allegedly per Schneider practice, sent an email announcing that Andrews had resigned.  After Andrews' termination, Andrews complained to Human Resources Business Partner Lisa Bos ("Bos") that he had been wrongfully terminated.  Bos investigated the complaint and concluded that there was no evidence that Schneider had discriminated or

retaliated against Andrews.

Andrews then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, sex discrimination, and retaliation. After receiving a right to sue letter from the EEOC, Andrews filed suit against Schneider asserting claims under Title VII, the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. § 21.001- 21.556 (West 2006), and Texas common law for race discrimination, sex discrimination, hostile work environment, retaliation, defamation, wrongful termination, and mental abuse in the workplace. Schneider moves for summary judgment on all of Andrews' claims. Andrews opposes the motion.

II

Because plaintiff will bear the burden of proof on his claims at trial, defendant can meet its summary judgment obligations by pointing to the absence of admissible evidence to support the claim in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once defendant does so, plaintiff must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiff's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted). Summary judgment is mandatory if plaintiff fails to meet this burden. *See Little*, 37 F.3d at

1076.

## III

The court will consider together Andrews' Title VII claims for race and sex discrimination, both of which are analyzed under the burden-shifting framework set forth in *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See, e.g., Smith v. City of St. Martinville*, 575 Fed. Appx. 435, 438 (5th Cir. 2014) (per curiam).

## A

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Because Andrews relies on circumstantial evidence to support his discrimination claims, they are properly analyzed under the *McDonnell Douglas* burden-shifting framework. *Smith*, 575 Fed. Appx. at 438.

As modified, the McDonnell Douglas framework consists of three stages. First, Andrews must establish a prima facie case of discrimination, which "creates a presumption that [Schneider] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of discrimination under the *McDonnell Douglas* framework, Andrews must show that

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably . . . than were other similarly situated employees who were not members of the protected class, under nearly identical

circumstances.

*Lee v. Kan. City S. R.R.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (per curiam)).

Second, if Andrews establishes a prima facie case, the burden shifts to Schneider to articulate a legitimate, nondiscriminatory reason for the employment action taken against him. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Schneider's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).

Third, if Schneider meets its production burden, Andrews may prove intentional discrimination by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (Title VII race discrimination case). Under the pretext alternative, Andrews must "offer sufficient evidence to create a genuine issue of material fact . . . that [Schneider's] reason is not true, but is instead a pretext for discrimination[.]" *Rachid*, 376 F.3d at 312. (citation and internal quotation marks omitted). Under the mixed-motives alternative, he must offer sufficient evidence to create a genuine issue of material fact "that [Schneider's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Andrews'] protected characteristic[.]" *Id.* (citation and internal quotation marks omitted).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

B

Schneider moves for summary judgment on Andrews' Title VII disparate treatment claims. It contends that because Andrews' supervisor, Barbera, is the same race and sex as is Andrews, Andrews faces the "heavy burden" of demonstrating that his supervisor chose to discriminate against an employee in his own protected category. It next argues Andrews cannot make out a prima facie case of race or sex discrimination because he has not shown that he was qualified for his position, has not shown that he suffered a materially adverse action, and has not identified a similarly-situated employee of a different race, sex, or skin color who was treated more favorably than he was under similar circumstances. Finally, Schneider contends that, even if Andrews could establish a prima facie case of race or sex discrimination, it is still entitled to summary judgment because Andrews can present no evidence that Schneider's stated reason for terminating Andrews' employment—his stated intent to resign—is pretextual.

Andrews responds that, although Barbera is the same race and sex as he, Barbera and Schneider in fact discriminated against him due to his sex and race. He contends that he was qualified for his position, demonstrated by the fact that Schneider hired him in the first place, and that his failure to meet RAMP performance objectives and the fact that Schneider's largest client was refusing to pay Schneider for its services do not undermine his

qualification for the job; that Schneider's termination of his employment before he formally resigned constituted an adverse employment action; and that he has identified Lodhi as a comparator. Regarding evidence of pretext, Andrews contends that Schneider's termination of his employment, in response to a private email that mentioned resignation, is illogical, because although Andrews mentioned resignation, this did not automatically mean he was going to resign, and that Schneider wanted to terminate his employment and simply used the email to achieve this goal.

C

Setting aside the undisputed fact that Andrews' supervisor is the same race and sex as Andrews, the court holds that Andrews has failed to establish a prima facie case of race or sex discrimination.  Assuming *arguendo* that Andrews can establish the first three elements, he has not introduced sufficient evidence to create a genuine fact issue on the fourth element—that he was treated differently from others similarly situated.

Andrews points to only one comparator—Lodhi—who is neither male nor African-American.  In response to Schneider's motion, he contends that he

> identified Lodhi as a comparator. Schneider treated Lodhi differently than Andrews when Schneider relocated its work station for Lodhi, relocated its parking space for Lodhi, provided more intense training for Lodhi, to name a few differences. When Andrews requested the same or similar treatment from Schneider, he did not receive any of the same or similar treatment.

P. Br. 6.  Although Andrews asserts that he and Lodhi were treated differently, he fails to show or even argue that he and Lodhi were similarly situated.  He does not contend that he

- 10 -

and Lodhi held the same position, reported to the same supervisor, performed the same or similar tasks, or were similarly qualified for their positions, and he presents no evidence that would enable a reasonable jury to find that Lodhi's performance was similarly deficient to his. Because Andrews has failed to establish that others similarly situated were treated differently, he cannot make out a prima facie case of race or sex discrimination. *See, e.g., Abarca*, 404 F.3d at 941-42 (affirming summary judgment for defendant where plaintiff failed to establish prima facie case of discrimination due to failure to demonstrate that others similarly situated were treated differently). As a result, he has failed to create a genuine issue of material fact as to an essential element of his claim. Thus the court holds that Schneider is entitled to summary judgment dismissing his Title VII claims for race and sex discrimination.

D

Alternatively, even if the court assumes *arguendo* that Andrews can establish a prima facie case of race or sex discrimination, Schneider is still entitled to summary judgment because Andrews has failed to adduce sufficient evidence for a reasonable jury to find in his favor on the essential element of pretext. Schneider has introduced evidence that it terminated Andrews' employment because he communicated his intent to resign via Schneider's email system. Andrews contends, without citing any evidence, that Schneider's proffered reason is pretextual because "although [he] may have mentioned resignation it didn't automatically mean he was going to resign," and "Schneider wanted to terminate [him], so it used the email to achieve that goal." P. Br. 6.

- 11 -

To establish pretext, Andrews must show that Schneider's "proffered explanation is false or unworthy of credence."  *Vaughn*, 665 F.3d at 637 (5th Cir. 2011) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)) (internal quotation marks omitted).  At the summary judgment stage, Andrews' burden is to raise a genuine issue of material fact regarding pretext.  *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *6 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) ("Because [defendant] has satisfied its burden to produce a legitimate, nondiscriminatory reason for [plaintiff]'s discharge, in order for [plaintiff] to survive summary judgment, he must create a genuine and material fact issue regarding the ultimate question of discrimination.").  And to carry this burden, Andrews "must produce substantial evidence of pretext."  *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001); *see also id.* at 403 n.3.

Andrews produces no evidence of pretext, but instead relies on his conclusory assertion, unsupported by any evidence or citation to the record, that Schneider's reason for terminating Andrews' employment is "illogical" and that Schneider "wanted to terminate [him], so [it] used the email to achieve that goal."  P. Br. 6.   This conclusory assertion—unsupported by a proper citation to the summary judgment record—is insufficient to withstand summary judgment.  *See, e.g., Choe v. Bank of Am., N.A.*, 2014 WL 2438378, at *3 (N.D. Tex. May 30, 2014) (Fitzwater, C.J.), *appeal docketed*, 14-10826 (5th Cir. July 24, 2014); *see also Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." (quoting *Douglass v. United Servs.*

- 12 -

*Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996))).

Accordingly, Schneider is entitled to summary judgment dismissing Andrews' Title VII race and sex discrimination claims on this alternate ground.

E

Schneider moves for summary judgment on Andrews' claim alleging sex discrimination against males (count two), arguing that Andrews testified that he has no evidence to support these allegations. Andrews does not respond to Schneider's argument regarding this claim. Although this failure does not permit the court to enter a "default" summary judgment on this claim, *see Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).

Accordingly, because Andrews has not raised a genuine issue of material fact on his claim for sex discrimination in the workplace, the court grants Schneider's motion for summary judgment dismissing this claim.

IV

The court turns next to Andrews' disparate impact claim. Disparate impact claims involve facially neutral employment policies that create such statistical disparities disadvantaging members of a protected class that make the policies "'functionally equivalent

to intentional discrimination.'" *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988)). "To establish a *prima facie* case of disparate impact, a plaintiff must (1) identify the challenged employment policy, (2) demonstrate a disparate impact that policy has on a protected class, and (3) demonstrate a causal relationship between the identified practice and the disparate impact." *Mayberry v. Mundy Contract Maintenance Inc.*, 197 Fed. Appx. 314, 317 (5th Cir. 2006) (per curiam) (citing *Gonzales v. City of New Braunfels*, 176 F.3d 834, 839 n.26 (5th Cir. 1999)).

Schneider moves for summary judgment on Andrews' disparate impact claim, contending that he has presented no statistical evidence and has failed to identify any specific practice that allegedly disparately impacted any particular race or sex. Andrews responds that he has established a prima facie case of race discrimination, that "Schneider treated other non-African[-]American, non-dark skin toned persons, females, under forty (40) years of age with less experience more favorably than Andrews," P. Br. 9, and that Schneider did not apply and enforce its policies equally concerning Andrews and other employees.

Andrews has offered no evidence that would enable a reasonable jury to find that a Schneider policy disproportionately affected a protected class.[4] Accordingly, the court grants Schneider's motion for summary judgment dismissing Andrews' disparate impact claim.

---

[4]To the extent Andrews relies on allegations of disparate *treatment*, these allegations are insufficient to establish a claim of disparate *impact*.

V

Schneider moves for summary judgment as to Andrews' hostile work environment claim.

A

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). To prove a hostile work claim based on race or sex, Andrews must establish the following:

> (1) [he] belongs to a protected group; (2)[he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race [or sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey*, 286 F.3d at 268 (citations omitted).

Schneider contends that Andrews has failed to show that any alleged harassment was based on a protected characteristic, and, in fact, Andrews admits that any unpleasantness between him and Lodhi was due to their failed sexual relationship; Andrews has failed to show that the alleged harassment affected a term, condition, or privilege of his employment; and Andrews cannot show that Schneider failed to take prompt remedial action in response to his reports of harassment.

Andrews responds that Schneider's conduct and practices were consistent and targeted and cannot be dismissed as simple teasing or isolated incidents; the conduct described in the complaint was deliberate, directed at a protected class, and consistently mean-spirited; and, when viewed under a totality of circumstances, the harassment alleged was both objectively and subjectively offensive.

B

The court concludes that Andrews has failed to create a genuine issue of material fact on his hostile work environment claim. He cites to no evidence from which a reasonable jury could find that he was subjected to harassment—based either on his race or his male sex—that affected a term, condition, or privilege of his employment. Instead, he relies on "the incidents described within the Complaint." P. Br. 13. Fed. R. Civ. P. 56(c)(1)(A) provides that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Under the law of this circuit, "[u]nsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). Andrews has therefore failed to offer any competent summary judgment evidence in support of his claim.[5] "If a party . . . fails to properly address another

_____

[5]Even if the court treats the affidavit that Andrews attached to his complaint as competent summary judgment evidence, the conclusory statements he makes are insufficient

- 16 -

party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion; [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" Rule 56(e).

Accordingly, the court grants Schneider's motion for summary judgment dismissing Andrews' hostile work environment claim.

## VI

The court next considers Schneider's motion for summary judgment as to Andrews' claim for retaliation under Title VII.

## A

Title VII prohibits employers from retaliating against employees who engage in an activity protected under the act. 42 U.S.C. § 2000e-3(a).[6] Because Andrews relies on circumstantial evidence to support this claim, he must proceed under the *McDonnell Douglas* burden shifting framework. *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400

---

to create a fact issue on his hostile work environment claim. *See, e.g., Choe*, 2014 WL 2438378, at *3; *see also Ramsey*, 286 F.3d at 269 (quoting *Douglass*, 79 F.3d at 1429).

[6]42 U.S.C. § 2000e-3(a) provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

(5th Cir. 2013) ("A retaliation claim that is premised on a pretextual rationale for dismissal is analyzed under the *McDonnell Douglas* framework.").

Andrews must first demonstrate a prima facie case for retaliation by showing that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *See, e.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). As to the third element, the requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but-for" causation that a jury must find. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing this prima facie case burden as "minimal").

If Andrews establishes a prima facie case, the burden shifts to Schneider to articulate a legitimate, nonretaliatory reason for the alleged retaliatory action taken. *Walker*, 2005 WL 2278080, at *9. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at * 16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If Schneider meets its production burden, the burden shifts back to Andrews to produce evidence that would enable a reasonable jury to find that retaliation for Andrews' protected conduct, rather than Schneider's proffered legitimate, nonretaliatory reason, was

the "but-for cause" of his termination.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S.

___, 133 S.Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire

to retaliate was the but-for cause of the challenged employment action."); *see also, e.g.,*

*Coleman v. Jason Pharms*., 540 Fed. Appx. 302, 304 (5th Cir. 2013) (per curiam) ("An

employee establishes pretext by showing that the adverse action would not have occurred

'but for' the employer's retaliatory reason for the action." (citing *Nassar*, 133 S.Ct. at 2533-

34)).  "In order to avoid summary judgment, [Andrews] must show 'a conflict in substantial

evidence' on the question of whether [Schneider] would not have taken the action 'but for'

the protected activity."  *Coleman*, 540 Fed. Appx. at 304 (quoting *Long*, 88 F.3d at 308).

### B

Schneider moves for summary judgment on Andrews' retaliation claim, contending,

*inter alia*, that Andrews has failed to show that he engaged in a protected activity and has

failed to present evidence that any materially adverse action was caused by his protected

activity or that Schneider's stated reason for his termination was pretextual.  Andrews

responds that, throughout the course of his employment, he "time and again suffered

unproductive disparaging remarks," P. Br. 10, and he offers a laundry list of actions he

claims were "retaliatory in nature," *id.* at 11.  Andrews also contends that "[o]ne of the most

egregious acts of retaliation and adverse employment action occurred when Schneider and

others, under the guise of a lawful reason, used an errant email to terminate Andrews'

employment," *id.*, that "Schneider further violated Andrews' civil rights by taking adverse

actions against him in response to his complaints about the unlawful and discriminatory

working conditions," *id.*, and that Schneider retaliated against him for having reported discriminatory conduct to management and for having participated in an EEOC proceeding.

## C

Although Andrews fails to cite any evidence that he engaged in a protected activity—he relies solely on his conclusory assertion that "Schneider further violated [his civil rights by taking adverse actions against him in response to his complaints about the unlawful and discriminatory working conditions," *id.*—there is evidence in the summary judgment record that, during the August 2012 meeting with Anderson and Campbell, Andrews reported that Lodhi had been harassing him.  The court will therefore assume that Andrews engaged in a protected activity.[7]  Regarding the second element of Andrews' prima facie case, although Schneider contends that Andrews resigned, the summary judgment record contains sufficient evidence that Andrews' employment was terminated, and termination would clearly constitute an adverse employment action.  *See, e.g., DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 Fed. Appx. 437, 442 (5th Cir. 2007) (per curiam) ("[T]ermination is clearly an adverse employment action[.]" (citing *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000))).  As for the third element, although there is a basis in the record to hold that Andrews has *not* met this element, the court will assume *arguendo* that Andrews has made the minimal showing required at the prima facie case stage

---

[7]To the extent Andrews bases his retaliation claim on the allegation that he was discriminated against in retaliation for filing a charge of discrimination with the EEOC, he does not produce any evidence that would enable a reasonable jury to find that he filed his charge of discrimination with the EEOC prior to his October 2012 termination.

to establish a "causal link" between a protected activity and an adverse employment action.

On the assumption that Andrews has established a prima facie case, the burden has shifted to Schneider to articulate a legitimate, nonretaliatory reason for the alleged retaliatory action taken. Schneider has met this burden of production by producing evidence that it terminated Andrews' employment because he communicated his intent to resign via Schneider's email system.

The burden therefore shifts to Andrews to introduce evidence that would enable a reasonable jury to find that his engaging in a protected activity was the but-for cause of the adverse employment action. Andrews has failed, however, to introduce evidence of a causal link between his "complaints about the unlawful and discriminatory working conditions," P. Br. 11, and any of the allegedly retaliatory acts he lists in his response, including his termination. Accordingly, he has failed to create a fact issue on the ultimate question of "but-for" causation. Andrews has failed to introduce evidence that would enable a reasonable jury to find that the proffered reason for his termination—his statement in an internal email that he intended to resign—was not the real reason Schneider terminated him. And Andrews neither contends nor has introduced evidence that he would not have been terminated "but for" his complaints about the unlawful and discriminatory working conditions at Schneider. In other words, based on the evidence in the summary judgment record, no reasonable jury could find that Andrews' informing Anderson and Campbell that Lodhi had been harassing him was the but-for cause of his termination. *See Nassar*, 133 S.Ct. at 2534.

- 21 -

Accordingly, the court concludes that Schneider is entitled to summary judgment dismissing plaintiff's retaliation claim.

## VII

Schneider moves for summary judgment as to Andrews' claim for wrongful termination, contending that, under Texas law, a claim for "wrongful termination" requires proof that the plaintiff was terminated for refusing to perform an illegal act, and, to the extent Andrews intends by his "wrongful termination" claim to assert that his termination was discriminatory, the claim is duplicative of his disparate treatment claims and fails for the same reasons. Schneider also moves for summary judgment on Andrews' claim for "mental abuse," contending that, to the extent Andrews intends to assert a claim under Texas law for intentional infliction of emotional distress, he has not shown "extreme or outrageous" conduct, as required under Texas law.

Andrews responds that he is not asserting a Texas common law claim for wrongful termination, but instead "bases his wrongful termination claims on specifically pled causes of action for harassment, discrimination and retaliation under Title VII and Chapter 21 of the Texas Labor Code." P. Br. 7. He also maintains that he is not asserting a stand-alone Texas common law "mental abuse" claim, but is instead alleging that, as an ongoing part of the day-to-day hostile work environment, Schneider and its employees subjected him to mental abuse, and that "'mental abuse' is a continuing part of the hostile work environment." *Id.* at 13.

For the reasons explained above, to the extent Andrews intends by his "wrongful

termination" claim to assert a claim for harassment, discrimination, and retaliation under Title VII, and to the extent Andrews intends by his "mental abuse" claim to allege a hostile work environment under Title VII, he has failed to create a genuine issue of material fact on these claims.  And to the extent Andrews asserts these claims under the TCHRA, "the law governing claims under the TCHRA and Title VII is identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (citation omitted).  Andrews' failure to create a fact issue on his Title VII claims also precludes him from creating a fact issue on his TCHRA claims.  Accordingly, the court grants Schneider's motion for summary judgment on Andrews' claims for "wrongful termination" and "mental abuse" to the extent based on Title VII and the TCHRA.

## VIII

The court now turns to Andrews' defamation claim.

## A

Schneider moves for summary judgment on this claim, contending that the statement that Andrews resigned is not defamatory and is substantially true, and that an alleged "conspiracy" to have him arrested is unsupported by the evidence and is not actionable as a defamation claim because Andrews fails to identify any "statement" by Schneider related to the alleged conspiracy that injured his reputation or injured him otherwise.  Andrews responds that he was subjected to defamation when Schneider published statements asserting that he was not a good worker, that he negatively performed his duties, and that he was not a team player, and when Schneider made public statements involving a private issue.

Schneider replies that Andrews has failed to cite any evidence to support his defamation claim, relying instead only on conclusory allegations that the statements tarnished his reputation.

B

Under Texas law, "[t]o recover for defamation, a private plaintiff must prove that the defendant (1) published a statement, (2) that was defamatory to the plaintiff, (3) while acting negligently as to the truth of the statement." *Montemayor v. Ortiz*, 208 S.W.3d 627, 651 (Tex. App. 2006, pet. denied) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).   A statement is defamatory if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury, or to impeach any person's honesty, integrity, virtue, or reputation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2011).   "Defamatory statements are 'published' if they are communicated orally, in writing, or in print to some third person capable of understanding their defamatory import and in such a way that the third person did so understand." *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App. 2003, no pet.) (citing *Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 335 (Tex. App. 1986, no writ)).

Andrews has failed to produce with any evidence that Schneider's statement that he resigned was defamatory.  His conclusory assertion that Schneider intended to "a) cause Andrews to be embarrassed, ridiculed and harassed, b) cause Andrews to be subject to persecution[,] c) cause Andrews to be withheld from training, thereby causing negative employment situations[,] d) cause Andrews['] reputation to be tarnished[,] and e) cause

- 24 -

Andrews to suffer damages," P. Br. 15, is unsupported by any evidence or proper citation to the record. It is therefore insufficient to enable a reasonable jury to find that Schneider's statement that Andrews had resigned exposed Andrews to public hatred, contempt, ridicule, or financial injury, or that it impeached his honesty, integrity, virtue, or reputation. *See, e.g., Choe*, 2014 WL 2438378, at *3; *see also Ramsey*, 286 F.3d at 269 (quoting *Douglass*, 79 F.3d at 1429). Nor has Andrews introduced any evidence in support of (or even responded to Schneider's summary judgment motion regarding) his defamation claim based on an alleged "conspiracy" to have him arrested. Accordingly, to the extent Andrews bases his defamation claim on Schneider's statement that he resigned or on an alleged "conspiracy" to have him arrested, the court grants Schneider's motion for summary judgment.

To the extent that Andrews contends that Schneider defamed him by publishing statements asserting that he was not a good worker, that he negatively performed his duties, that he was not a team player, and that involved a private issue, the court raises *sua sponte*[8] that Schneider is entitled to summary judgment on the basis that Andrews has failed to present admissible summary judgment evidence that any of these statements was published, was defamatory, or that Schneider acted negligently as to the truth of the statement.[9]

---

[8]The court can raise a new ground for summary judgment *sua sponte*, provided it affords the opposing party notice and a fair opportunity to respond. *See, e.g., Jackson*, 2006 WL 680471, at *9 (citing *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)).

[9]The first three of these three grounds are not even pleaded in Andrew's complaint. Although this provides an independent basis to grant summary judgment dismissing them as a predicate for Andrew's defamation claim, the court will instead raise *sua sponte* that these

- 25 -

Because the court is raising this ground *sua sponte*, it grants Andrews leave to file an opposition response, brief, and appendix within 21 days of the date this memorandum opinion and order is filed.   Andrews must demonstrate why the court should not grant summary judgment dismissing his defamation claim based on his unsupported allegations that Schneider published statements asserting that he was not a good worker, that he negatively performed his duties, that he was not a team player, and that involved a private issue.  The court will evaluate Andrews' papers before deciding whether to invite Schneider to file a reply brief.

\*   \*   \*

Accordingly, for the reasons explained, the court grants Schneider's motion for summary judgment and raises *sua sponte* that Schneider is entitled to summary judgment on the additional grounds for Andrews' defamation claim.  The court grants Andrews 21 days from the date this memorandum opinion and order is filed to file an opposition response, brief, and appendix that address the four grounds for Andrews' defamation claim on which the court has raised summary judgment *sua sponte*.

**SO ORDERED**.

November 18, 2014.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

and the other ground are not supported by summary judgment evidence that would enable a reasonable jury to find in Andrews' favor.

- 26 -